UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| NAGA VIJAYA CHINTA, | ) |
|           Plaintiff, | ) |
|     v. | ) Case No. _____ |
| NTN BUZZTIME, INC., ALLEN WOLFF, MICHAEL GOTTLIEB, RICHARD SIMTOB, SUSAN MILLER, BIT MERGER SUB, INC., and BROOKLYN IMMUNOTHERAPEUTICS LLC, | ) JURY TRIAL DEMANDED |
|           Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. On August 12, 2020, NTN Buzztime, Inc.'s ("NTN" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused NTN to enter into an agreement and plan of merger and reorganization (the "Merger Agreement") with BIT Merger Sub, Inc. ("Merger Sub") and Brooklyn Immunotherapeutics LLC ("Brooklyn").

2. Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into Brooklyn, with Brooklyn continuing as a wholly-owned subsidiary of NTN; and (ii) the membership interests of Brooklyn will be converted into the right to receive a number of shares of NTN common stock such that former Brooklyn members will own between approximately 94.08% and 96.74% of the outstanding common stock of NTN and NTN's shareholders will own between approximately 5.92% and 3.26% (the "Proposed Transaction").

3. On October 2, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC"), which recommends that NTN's stockholders vote to approve, among other things, the issuance of stock in connection with the Proposed Transaction.

4. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of NTN common stock.

9. Defendant NTN is a Delaware corporation and maintains its principal executive offices at 6965 El Camino Real, Suite 105-Box 517, Carlsbad, California 92009. NTN's common stock is traded on the New York Stock Exchange American under the ticker symbol "NTN."

10. Defendant Allen Wolff is Chief Executive Officer and Chairman of the Board of the Company.

11. Defendant Michael Gottlieb is a director of the Company.

12. Defendant Richard Simtob is a director of the Company.

13. Defendant Susan Miller is a director of the Company.

14. The defendants identified in paragraphs 10 through 13 are collectively referred to herein as the "Individual Defendants."

15. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of NTN, and a party to the Merger Agreement.

16. Defendant Brooklyn is a Delaware limited liability company and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

17. NTN delivers interactive entertainment and innovative technology that helps its customers acquire, engage, and retain its patrons.

18. The Company's tablets, mobile app, and technology offer engaging solutions to establishments that have guests who experience dwell time, such as in bars, restaurants, casinos, and senior living centers.

19. On August 12, 2020, the Board caused NTN to enter into the Merger Agreement with the Merger Sub and Brooklyn.

20. Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into Brooklyn, with Brooklyn continuing as a wholly-owned subsidiary of NTN; and (ii) the membership interests of Brooklyn will be converted into the right to receive a number of shares of NTN common stock such that former Brooklyn members will own between approximately 94.08% and 96.74% of the outstanding common stock of NTN and NTN's shareholders will own between approximately 5.92% and 3.26%.

21. According to the press release announcing the Proposed Transaction:

NTN Buzztime, Inc. (NYSE American: NTN) and Brooklyn ImmunoTherapeutics LLC ("Brooklyn"), a privately-held biopharmaceutical company focused on exploring the role that cytokine-based therapy can have in treating patients with cancer, today announced that the companies have entered into a definitive merger agreement. If approved by the stockholders of NTN Buzztime and the beneficial holders of the Class A membership interests of Brooklyn, Brooklyn will merge with a wholly-owned subsidiary of NTN Buzztime in an all-stock transaction. Following closing, which the parties expect will occur in the fourth quarter of 2020, the combined company will continue under the Brooklyn ImmunoTherapeutics name and will focus on the advancement of Brooklyn's program to further develop its cytokine-based drug for the treatment of various cancers. . . .

About the Proposed Merger

Under the merger agreement, immediately following the closing of the merger, the members of Brooklyn collectively will own 94.08% of the outstanding common stock of the combined company and NTN Buzztime stockholders immediately prior to the closing of the merger collectively will own 5.92% of the outstanding common stock of the combined company, which percentages are subject to adjustment based on Brooklyn's cash and cash equivalents and NTN Buzztime's net cash balance at the closing, all as more particularly set forth in the merger agreement.

The merger agreement contains customary representations, warranties and covenants made by NTN Buzztime and Brooklyn, including covenants relating to both parties using their best efforts to cause the transactions contemplated by the merger agreement to be satisfied, covenants regarding obtaining the requisite approvals of NTN Buzztime stockholders and the beneficial holders of the Class A membership interests of Brooklyn, covenants regarding indemnification of directors and officers, and covenants regarding NTN Buzztime's and Brooklyn's conduct of their respective businesses between the date of signing of the merger agreement and the closing. The merger agreement also contains certain termination rights for both NTN Buzztime and Brooklyn, and, in connection with the

termination of the merger agreement under specified circumstances, NTN Buzztime and Brooklyn may be required to pay the other party a termination fee.

As a condition to the closing of the merger, Brooklyn has agreed that it will not have less than $10 million in cash and cash equivalents and not more than $750,000 of indebtedness for borrowed money at the closing. Certain beneficial holders of Brooklyn's Class A membership interests have entered into contractual commitments to invest $10 million into Brooklyn immediately prior to the closing of the merger. Further, as a condition to the closing of the merger, NTN has committed that the deficit in its net cash at the closing, as calculated under the merger agreement, will not exceed $3 million.

The combined company, led by Brooklyn's current management team, is expected to be named "*Brooklyn ImmunoTherapeutics, Inc.*" and be headquartered in Brooklyn, NY. After the closing, the combined company is expected to trade on the NYSE American market under a new ticker symbol.

The merger agreement has been unanimously approved by the board of directors of NTN Buzztime, upon the recommendation of its strategic committee, and by the managers of Brooklyn. The NTN Buzztime board of directors have also recommended to NTN Buzztime's stockholders that they vote to approve issuance of the shares to the members of Brooklyn pursuant to the merger agreement, and the managers of Brooklyn have recommended to the beneficial holders of the Class A membership interests of Brooklyn that they approve the merger agreement and the merger. The transaction is expected to close in the fourth quarter of 2020, subject to approvals by the requisite stockholders of NTN Buzztime and beneficial holders of the Class A membership interests of Brooklyn described above, the continued listing of the combined company on the NYSE American, each of the company's meeting its capitalization or net cash condition, as applicable, and other customary closing conditions.

In connection with the transaction, Maxim Group LLC is serving as the financial advisor for Brooklyn and Newbridge Securities Corporation is serving as the financial advisor to NTN Buzztime. Further, Breakwater Law Group, LLP and Sheppard, Mullin, Richter & Hampton LLP are serving as legal counsel to NTN Buzztime and Akerman LLP is serving as legal counsel to Brooklyn in connection with the transaction.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

22. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

23. As set forth below, the Registration Statement omits material information.

24. First, the Registration Statement omits the Company's financial projections.

25. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

26. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor, Newbridge Securities Corporation ("Newbridge").

27. With respect to Newbridge's Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the terminal values of Brooklyn; (ii) the unlevered free cash flows used in the analysis and all underlying line items; and (iii) Newbridge's basis for applying a perpetuity rate of 1.0%.

28. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

29. Third, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions.

30. The omission of the above-referenced material information renders the Registration Statement false and misleading.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and NTN

32. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  NTN is liable as the issuer of these statements.

34. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

35. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

37. The Registration Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

38. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements in the Registration Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants, Brooklyn, and Merger Sub

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants, Brooklyn, and Merger Sub acted as controlling persons of NTN within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of NTN and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

42. Each of the Individual Defendants, Brooklyn, and Merger Sub was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

44.     Brooklyn and Merger Sub also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

45.     By virtue of the foregoing, the Individual Defendants, Brooklyn, and Merger Sub violated Section 20(a) of the 1934 Act.

46.     As set forth above, the Individual Defendants, Brooklyn, and Merger Sub had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 16, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*